IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lisa Maseng, | ) | C/A No.: 3:19-3245-SAL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Tuesday Morning, Inc., and | ) | ORDER |
| Continuum Sales & Marketing | ) | |
| Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Lisa Maseng ("Plaintiff") brings this product-liability action against Tuesday Morning, Inc. ("Tuesday"), and Continuum Sales & Marketing Corp. ("Continuum"), arising out of an incident that occurred on or about October 6, 2018, when a Lenox Corp. ("Lenox") 2.5-quart stainless steel whistling tea kettle ("kettle") allegedly expelled hot water onto Plaintiff during use, causing burn injuries.[1] Continuum imported the kettle, which was sourced from Ai Bang Bao Metal Products, Ltd. in China ("Ai Bang Bao"), and Tuesday allegedly sold the kettle. [ECF No. 1-1 ¶ 6, ECF No. 43 at 1].

This matter comes before the court on Plaintiff's motion to compel discovery from Continuum, filed May 7, 2020. [ECF No. 42]. The motion was

---

[1] Lenox, a previously named defendant, was dismissed from this action on April 16, 2020, following the court's grant of Lenox's motion to dismiss for lack of personal jurisdiction. [ECF No. 38]. Additionally, the court has stayed this case only as to Tuesday pending outcome of Tuesday's bankruptcy proceedings. [*See* ECF No. 47].

referred to the undersigned pursuant to 28 U.S.C. § 636(b). This matter having been fully briefed [ECF No. 42, 43], it is ripe for disposition. For the reasons that follow, the court grants in part and denies in part Plaintiff's motion.

I.    Factual and Procedural Background

Plaintiff served interrogatories and requests for production on Continuum on December 9, 2019. [*See* ECF No. 42-1 at 4]. Continuum served responses on February 10, 2020, presenting its objections and producing a privilege log and thereafter supplementing its production and privilege log. *See id.* The parties have exchanged emails and held telephone conferences, including an informal telephone discovery conference with the court on April 30, 2020 [ECF No. 41], to discuss Continuum's objections to various discovery requests. Most issues have been resolved. *See id.*

Regarding the subject of the instant motion to compel, Plaintiff argues that Continuum has objected to providing complete information and full documents production response to her Interrogatory No. 11, and Requests for Production Nos. 3, 4, 18, 20, 22, and 23. [*See* ECF No. 42-1 at 4–6]. More specifically, Plaintiff argues Continuum "continues to withhold 31 pages of documents, primarily on the basis of the common interest doctrine, although it also asserts the self-critical analysis privilege, attorney-client privilege, and work product doctrine," and that this set of documents includes the common interest agreement that was executed between Lenox and Continuum on

December 19, 2017. *Id.* at 6–7.[2] Continuum describes the withheld documents with reference to the updated privilege log as follows:

> 1) Continuum's Common Interest Agreement and Communications with Lenox.
>
> On December 19, 2017, Continuum and Lenox entered into a Common Interest Agreement memorializing their intent to exchange "common interest materials" regarding regulatory compliance and anticipated litigation without waiving applicable privileges. This Agreement was entered into after tea kettle issues had been reported to Lenox, one of which involved burn injuries that resulted in litigation. (Privilege Log #1).
>
> Between June 2017 and December 2018, Lenox notified Continuum of fourteen customer complaints involving tea kettles. Each of the incidents were first reported to Lenox, who then notified Continuum. On July 20, 2017, Continuum learned of the first two incidents, *Elegonye* and *Zaridze*. Continuum produced to Plaintiff the customer complaints prepared by *Elegonye* and *Zaridze*, including photograph attachments, along with the pleadings from the lawsuit filed in *Elegonye*. Out of privacy concerns, Continuum redacted the photographs showing *Elegonye's* injury and produced the redacted copies to Plaintiff so that she was aware of their existence.[3] The logged materials that Continuum has withheld are the privileged communications exchanged between Continuum, Lenox, and /or the liability insurer following these incidents. (Privilege Log #5 and #6).
>
> On October 4, 2018, Continuum received from Lenox a one-page report containing information regarding seven additional incidents. Of these seven incidents, Continuum received materials for *Gorman*, a lawsuit alleging personal injury. Not only has Continuum produced the injury and produced the one-page incident report to Plaintiff, but Continuum also produced the

---

[2] Continuum has produced the relevant documents to the court for in camera review.

[3] Continuum has represented to the court that Plaintiff's counsel withdrew her claim for the injury photographs during the April 30, 2020 discovery conference call with the court. [ECF No. 43 at 2 n.2].

*Gorman* pleadings and communications to Lenox. The logged materials that Continuum has withheld are the privileged communications exchanged between Continuum, Lenox, and/or the liability insurer following the *Gorman* incident. (Privilege Log #9).

In late 2018, Continuum received notice from Lenox regarding three additional claims, one of which involved the Plaintiff (*Maseng, Son Ly, Cabrera-Machado*). Continuum has produced all communications, pleadings, and/or other materials in its possession related to these incidents except for the privileged communications exchanged between Continuum, Lenox, and/or the liability insurer (Privilege Log #2, #7, #8).

Finally, on November 29, 2018, Lenox's counsel sent a two-page letter to Continuum after learning of two injury claims. The letter contains legal opinion and analysis prepared in anticipation of litigation and regulatory compliance. For these reasons, Continuum withheld the privileged communication from discovery. (Privilege Log #3).

2) Certain Communications with the Manufacturer, Ai Bang Bao.

Between January 11–19, 2019, Continuum exchanged emails with Ai Bang Bao regarding three ongoing lawsuits and/or personal injury claims, one of which involved the Plaintiff. These emails are privileged communications because they arose after the injuries were reported to Lenox and Continuum. (Privilege Log #4).

[ECF No. 43 at 2–3].

## II.    Discussion

### A.    Standard of Review and Choice of Law

"[A] district court has wide latitude in controlling discovery and . . . its rulings will not be overturned absent a clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986) (citations omitted). Further, "[t]he latitude given the district court extends as well to the manner

in which it orders the course and scope of discovery." *Id.* (citations omitted). Courts are to broadly construe rules enabling discovery. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Limitations on discovery are to be construed narrowly. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. However, "South Carolina has not yet established a choice of law doctrine applicable to privilege issues." *Wellin v. Wellin*, 211 F. Supp. 3d 793, 801 (D.S.C. 2016), order clarified, C/A No. 2:13-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017). Notwithstanding, the parties agree that South Carolina law governs the privilege claims at issue. [ECF No. 42-1 at 12, ECF No. 43 at 4].

B.    Analysis

1.    Availability of the Common Interest Doctrine

As a preliminary issue, the parties dispute whether Continuum can invoke the common interest doctrine, with Plaintiff arguing the doctrine is unavailable "because South Carolina has not recognized this doctrine in the product liability context . . . ." [ECF No. 42-1 at 11–12].

The common interest doctrine, also commonly referred to as the joint defense doctrine, "protects the transmission of data to which the attorney-

client privilege or work product protection has attached when it is shared between parties with a common interest in a legal matter." *Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 531 (S.C. 2010). "The doctrine is not a privilege in itself but is instead an exception to the waiver of an existing privilege," in that it is "an exception to the general rule that disclosure of privileged information waives the applicable privilege." *Id.* (citing *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 248 (4th Cir. 1990)). "The purpose of the privilege is to allow persons with a common interest to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005) (citation omitted).

As recognized by this court, "*Tobaccoville* adopted the common interest doctrine only for a narrow factual scenario." *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F. Supp. 3d 474, 480 (D.S.C. 2016). As stated by the South Carolina Supreme Court in *Tobaccoville*:

> We now adopt the common interest doctrine for the narrow factual scenario where several states are parties to a settlement agreement, the state laws that regulate and enforce that settlement all have the same provisions, the attorneys general of those settling states are involved in coordinating regulation and enforcement, and the settling states have executed a common interest agreement.

692 S.E.2d at 531.

6

Although "[n]o subsequent South Carolina case [has] addresse[d] this issue," this court had held the South Carolina Supreme Court would apply the common interest doctrine in additional scenarios, including, for example, "a confidential relationship between and insurer, an insured, and counsel by the insurer for the insured." *State Farm Fire & Cas. Co.*, 225 F. Supp. 3d at 480–82; *see also Wellin*, 211 F. Supp. 3d at 811 ("The doctrine is unquestionably available under federal and New York privilege law, which is at least suggestive of South Carolina courts' position on the issue, given South Carolina courts' tendency to cite to New York or federal privilege law."); *First S. Bank v. Fifth Third Bank, N.A.*, C/A No. 7:10-2097-MGL, 2013 WL 1840089, at *8 (D.S.C. May 1, 2013) (citing *Fort v. Leonard*, C/A No. 7:04-1028-HFF-WMC, 2007 WL 518593 (D.S.C. 2007)) ("[T]he privilege has been applicable in virtually any litigation-related setting, provided the parties share a common interest, and that confidential information was exchanged to facilitate their legal representation.").

While recognizing the above case law, Plaintiff argues the doctrine is unavailable to Continuum because South Carolina courts have not adopted this court's view and this case does not involve any of the situations or parties described, further noting that Plaintiff is unaware of any South Carolina District Court or Fourth Circuit opinion applying the common interest doctrine specifically in the context of a product liability action. [ECF No. 42-1 at 13–14].

Plaintiff fails, however, to address the reasoning provided by this court in holding that the South Carolina Supreme Court would apply the common interest doctrine in scenarios beyond those listed in *Tobaccoville*, nor does she offer any argument or case law as to why the context of a product liability action necessitates a different result from the prior holdings of this court. *See, e.g., State Farm Fire & Cas. Co.*, 225 F. Supp. 3d at 481–82 (holding the South Carolina Supreme Court would apply the common interest doctrine to a confidential relationship between an insurer, an insured, and counsel retained by the insurer for the insured because (1) "most if not all states have adopted some version of the common interest doctrine," (2) "the South Carolina Supreme Court relied upon Fourth Circuit case law when considering the common interest doctrine in *Tobaccoville*," and (3) "strong policy reasons support application of the common interest doctrine" to the scenario of that case). The court therefore rejects Plaintiff's argument that this doctrine is unavailable beyond the narrow factual scenario provided in *Tobaccoville*, and finds this prior court's reasoning persuasive as to why this doctrine should be available in the instant case. *See id.*; *see also In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d at 249 (citations omitted) ("Because [t]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter, courts have extended the joint defense privilege to civil co-defendants . . . .").

Plaintiff next argues that even if this court determines that South Carolina would recognize the common interest doctrine in a product liability context, the doctrine is still unavailable to Continuum because, if the doctrine should apply at all, "it should apply only to parties with identical legal interests." [ECF No. 42-1 at 14]. However, the cases Plaintiff cites from this circuit generally do not support such a restricted view of the application of the doctrine, and the Fourth Circuit and this court have held otherwise: "For the privilege to apply, the proponent must establish that the parties had some common interest about a legal matter." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341 (citation omitted); *First S. Bank*, 2013 WL 1840089, at *8 (recognizing the privilege whenever "the parties share a common interest about a legal matter, even when the holder of the interest is a non-party or a potential co-party to prospective litigation"); *see also Wellin*, 211 F. Supp. 3d at 812 ("[T]he court finds that they possess and identical legal interest in this litigation. The fact that the parties also possess other, potentially divergent interests does not change the [common interest] analysis. So long as the parties communicated privileged material in an effort to advance their common interest, the interest requirement is satisfied.").[4]

---

[4] The cases Plaintiff cites generally stand for the proposition that identical legal interests are regarded as "common" within the meaning of the doctrine. *See, e.g., Tobaccoville*, 692 S.E.2d at 531 ("the common interest stems from the MSA creation of identical rights and obligations for the settling states); *State Farm Fire & Cas. Co.*, 225 F. Supp. 3d at 482 ("disclosure of privileged

Additionally, the doctrine applies regardless of whether the common interest is relevant to the current litigation. *See Tobaccoville*, 692 S.E.2d at 531 ("It is irrelevant that the current lawsuit is not of common interest . . . . When the common interest doctrine applies, it operates as an exception to any potential waiver of privilege, regardless of the subject matter of the present litigation."). As further explained by the Fourth Circuit:

> Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d at 249.

Finally, "although a common interest agreement can be inferred where two parties are clearly collaborating in advance of litigation, mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 284–85 (4th Cir. 2010).

---

information . . . in which Admiral and its insured had essentially identical interests does not waive the attorney-client privilege"); *but see Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.").

10

2.    Other Applicable Doctrines and Privileges

Defendants additionally invoke the attorney-client privilege, the work-product doctrine, and the self-critical analysis privilege. As recently stated by the Fourth Circuit, the attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 172–73 (4th Cir. 2019), as amended (Oct. 31, 2019) (citation omitted). "The attorney-client privilege empowers a client—as the privilege holder—'to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney.'" *Id.* at 173 (citation omitted). The privilege consists of the following essential elements: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except where the protection is waived. *First S. Bank*, 2013 WL 1840089, at *3 (citing *Tobaccoville*, 692 S.E.2d at 530).

Regarding the work-product doctrine, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," absent a showing that the materials are otherwise discoverable and that party

11

"has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(3)(A). "Although the work-product doctrine does not trace as far into history as the attorney-client privilege, it is no less important." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 173. This "'qualified privilege,' to be held by lawyer and client alike," is "for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *Id.* at 173–74 (citing *United States v. Nobles*, 422 U.S. 225, 237–38 (1975)).

"There are two types of attorney work product that are within the ambit of the doctrine: (1) fact work product, which is 'a transaction of the factual events involved,' and (2) opinion work product, which 'represents the actual thoughts and impressions of the attorney.'" *Id.* at 174 (citing *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017)). Regarding the former, discovery may be allowed "in limited circumstances, where a party shows both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* (citation omitted). Opinion work product, however, "enjoys a nearly absolute immunity and can be discovered by adverse parties only in very rare and extraordinary circumstances." *Id.* (citation omitted).

As noted by this court, the "the self-critical evaluation privilege is a privilege of recent origin and one that is narrowly applied even in those

jurisdictions where it is recognized." *In re Air Crash at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1052, 1054 (D.S.C. 1995). Although this privilege has rarely been invoked in this district:

> [O]ther courts have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least three criteria: 'first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed.' Note, The Privilege of Self–Critical Analysis, 96 Harv.L.Rev. 1083, 1086 (1983). To these requirements should be added the general proviso that no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. See James F. Flanagan, Rejecting a General Privilege for Self–Critical Analyses, Geo.Wash.L.Rev. 551, 574–576 (1983) . . . .

*Id.* (citing *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 425–426 (9th Cir.1992)); *see also Crosby v. United States*, C/A No. 3:07-3668-JFA, 2009 WL 10678824, at *3 (D.S.C. Jan. 22, 2009) (same).

Additionally, and as a general matter, the proponent of a privilege has the burden to prove the elements of the privilege, *see In re Grand Jury Subpoena*, 415 F.3d at 338–39, and the privilege is to be construed narrowly, *see Fisher v. United States*, 425 U.S. 391, 403 (1976).

        3.     Materials at Issue

            i.     The Common Interest Agreement, Privilege Log #1

As stated by Continuum, and confirmed by the court's in camera review, the common interest agreement was entered into by Continuum and Lenox on

13

December 19, 2017. [*See* ECF No. 43 at 5]. The agreement memorializes the parties' intent to collaborate and exchange "common interest materials" in the investigation of (1) tea kettle issues, (2) subsequent reporting to the Consumer Product Safety Commission (the "Commission"), and (3) "anticipated proceedings that may arise relating to the kettle issues." *Id.* It further provides that the parties intend to share materials "in preparation of a common defense" and, that by entering the agreement, the parties "wish to avoid any suggestion of waiver of any privilege, confidentiality, or immunity of communications." *Id.*

Courts are divided over whether these types of agreements are privileged. *See, e.g., AMEC Civil, LLC v. DMJM Harris, Inc.*, C/A No. 06-064 FLW, 2008 WL 8171059, at *4 (D.N.J. July 11, 2008) ("Generally, joint defense agreements are protected by work product privilege, and are therefore not discoverable without showing substantial need."); *Pac. Coast Steel v. Leany*, C/A No. 2:09-CV-02190-KJD, 2011 WL 4572008, at *3 (D. Nev. Sept. 30, 2011) ("Joint defense agreements are generally not privileged. They serve only to formalize the invocation of the joint defense or common interest.").

However, in the instant case and following review of the agreement, the court finds the agreement at issue, at least in significant part, was "produced in anticipation of litigation and therefore protectable as work product." *ADP, LLC v. Ultimate Software Grp., Inc.*, C/A No. 17-61274, 2017 WL 7794226, at *2 (S.D. Fla. Dec. 15, 2017); *Falana v. Kent State Univ.*, C/A No. 5:08-720, 2012

14

WL 6084630, at *4 (N.D. Ohio Dec. 6, 2012) ("As a result of its in camera review, the Court concludes that, for purposes of plaintiff's discovery request, the correspondence sought by plaintiff is protected from disclosure on the basis of attorney-client privilege/common interest privilege and work-product doctrine as asserted by defendants, except as hereinafter provided.").

Additionally, review of the agreement reveals it does not contain substantive information beyond that already disclosed to Plaintiff and instead contains standard, boilerplate language, rendering the agreement irrelevant to Plaintiff's claims and defenses. *See, e.g., In re Takata Airbag Prod. Liab. Litig.*, C/A No. 15-02599-MD-MORENO, 2017 WL 10351709, at *5 (S.D. Fla. Mar. 7, 2017), report and recommendation adopted, C/A No. 15-02599-MD, 2017 WL 10351558 (S.D. Fla. May 17, 2017) ("As was the case in [*Warren Distrib. Co. v. InBev USA LLC*, No. 0701053 (RBK), 2008 WL 4371763 (D.N.J. Sept. 18, 2008)] and [*Ford Motor Co. v. Edgewood Props.*, 457 F.R.D. 418 (D.N.J. 2009)], most of the paragraphs in Honda's Joint Defense and Confidentiality Agreement with TK Holdings contain standard, boilerplate language 'that the parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party' . . . . Consequently, these paragraphs in Honda's Joint Defense Agreement are distinguishable from the joint defense paragraphs in [*Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, No. 07-22326CIV-DIMITROU, 2008 WL 756455, at *10

15

(S.D. Fla. Mar. 11, 2008)], which were deemed relevant (but nonetheless protected by the work-product doctrine) because they specifically 'touch[ed] on the Defendants' trial strategies.'").

Accordingly, the court denies Plaintiff's motion to compel with regards to this agreement.

      ii.    The *Cabrera-Machado* Emails, Privilege Log # 2

As stated by Continuum, this one-page email includes two parts: (1) an email dated December 17, 2018, from claimant Cabrera-Machado to Lenox, and (2) an email between Lenox's personnel forwarding the reported claim to the appropriate department. [ECF No. 43 at 7]. The *Cabrera-Machado* claim concerns a malfunctioning kettle and whether the kettle is covered by a lifetime warranty. Continuum has produced to Plaintiff the communication between Cabrera-Machado and Lenox; however, Continuum argues it maintains a privilege over the internal Lenox communication that includes Lenox's counsel, Robert Cohen ("Cohen"). *Id.* Continuum's argument is that pursuant to the common interest doctrine, Continuum may assert attorney-client privilege and work-product doctrine regarding Lenox's internal emails that include Lenox's counsel. *See id.*

Under the common interest doctrine "communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense." *Waller*, 828 F.2d at 583 n. 7

16

(citations omitted). Here, however, there is no indication how or when these emails were shared with Continuum or that they were shared for purposes of a common defense. As correctly noted by Plaintiff, and not addressed by Continuum, "no Continuum employees or agents are included in this communication, and it is unclear how or when Continuum even came into possession of these emails." [ECF No. 42-1 at 18]. Thus, the court cannot conclude that these emails, where Cabrera-Machado inquires of Lenox about a warranty, were communicated to Continuum by Lenox "to more effectively prosecute or defend their claims." *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341 (citation omitted).

Accordingly, the court grants Plaintiff's motion regarding these emails.

### iii.    Lenox's Letter to Continuum, Privilege Log #3

On November 29, 2018, fifteen days after receiving Plaintiff's counsel's letter reporting "catastrophic burn injuries" [ECF No. 43-2], Cohen sent a letter to Continuum discussing recent injury reports and regulatory compliance requirements. As stated by Continuum and confirmed by the court, Lenox's letter contains mental impressions and legal analysis from Lenox's counsel to Continuum regarding Continuum's duties and obligations in reporting to the Commission. [ECF No. 43 at 8].[5] There appears a "Confidential

---

[5] Although Continuum argues this letter also contains detailed mental impressions and legal analysis from Lenox's counsel concerning Continuum's duties and obligations as to "the recently filed injury claims," [ECF No. 43 at

& Privileged" heading at the top of the letter, and the letter states that "the joint defense agreement in which we all joined is still binding so that we are able to freely discuss the issue between us." *See id.*

As stated above, the common interest doctrine "is not a privilege in itself, but is instead an exception to the waiver of an existing privilege." *Tobaccoville*, 692 S.E.2d at 531. Continuum asserts both attorney-client privilege and work-product doctrine regarding this letter, but appears to collapse the applicable analysis, arguing that because the common interest doctrine has been extended to civil co-defendants, Continuum can assert privilege over communications made by and work product produced by Lenox's attorneys. [ECF No. 43 at 7–9]. However, "[a]ll attorney-client communications or work product . . . must first satisfy the traditional requisites for the attorney-client or work product privilege before they become or remain privileged. Once these requirements are satisfied, shared or jointly created material must pass an *additional* test: It must be disclosed pursuant to a common legal interest and pursuant to an agreement to pursue a joint defense." *Minebea Co. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (emphasis in original).

First, Continuum has failed to carry its burden demonstrating it had or has a relationship with Lenox's attorneys such that Lenox's communications

---

8], the focus of this letter concerns only Continuum's duties and obligations in reporting to the Commission.

are protected under attorney-client privilege. Although Continuum argues "Lenox approached Continuum in a confidential, private manner regarding the pending injury claims and proper regulatory compliance," [ECF No. 43 at 9], such unsolicited advice does not create an attorney-client relationship, even in the current context. *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 339 ("The person seeking to invoke the attorney-client privilege must prove that he is a client or that he affirmatively sought to become a client.").

Continuum disagrees, invoking *Tobaccoville*, where the attorney general argued materials exchanged with the National Association of Attorney General ("NAAG") were protected by attorney-client privilege. The court held that even though the attorney general had not "retained" the NAAG in the traditional sense, "the attorney-client privilege may apply to this very narrow factual scenario because the AG, as a paid member, has solicited the NAAG attorneys for legal advice and consultation on matters relating to the tobacco litigation, the MSA, subsequent enforcement of the MSA, and tobacco regulation," remanding the matter "to determine if the allegedly privileged documents are confidential communications pertaining to the above legal matters." 692 S.E.2d at 530.

Here, however, there is no indication that Continuum solicited, retained, or even requested legal advice or consultation on any matter from Lenox's attorneys. The parties' common interest agreement indicates otherwise where

the parties agreed only to "exchange materials" and Lenox's counsel made clear, in both the common interest agreement and the instant letter, that they did not represent Continuum. Although Continuum correctly argues that *Tobaccoville* stands for the proposition that materials can be protected by the attorney-client privilege even absent a traditional attorney-client relationship, here, no attorney-client relationship exists. Thus, there exists no foundational attorney-client privilege to invoke and the common interest doctrine is not implicated.

Likewise, notwithstanding the parties' intentions and the invocation of the common interest agreement within the letter, Continuum has not carried its burden to show this letter is protected under the work-product doctrine. This is not the case where a document was created in anticipation of litigation or for trial by a party or its representative. *See* Fed. R. Civ. P. 26(3)(A). Instead, this document was created by Lenox's attorneys to advise Continuum as to what Lenox perceived to be Continuum's regulatory compliance responsibilities.

As stated by the Fourth Circuit:

> The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

20

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d at 984 (emphasis in original). As further directed by the Fourth Circuit, the court is to consider "the driving force behind the preparation of each requested document," *id.*, and in this instance, although Continuum argues otherwise, the letter makes clear the driving force concerns regulatory compliance.[6]

Finally, to the extent an underlying privilege exists, Continuum has not carried its burden to show that this letter, focused on regulatory compliance, was provided by Lenox to Continuum in order "to more effectively prosecute or defend their claims." *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341 (citation omitted); *see also In re Grand Jury* Subpoenas, 89-3 & 89-4, John Doe 89-129, 902 F.2d at 250 (emphasis added) ("Accordingly, we hold that all documents *that relate to the prosecution of the claim* against the Army *or to the defense* of the Army's counterclaim, and which are subject to the attorney-client or work-product privilege, are subject to a joint defense privilege that Subsidiary may not waive unilaterally."). Thus, any underlying privilege has been waived.

---

[6] If Lenox's attorneys had created the report they perceived Continuum needed to meet regulatory compliance, it would not be work product under this doctrine. Therefore, even if Lenox's attorneys were, in part, concerned about future litigation, their letter focused on a need for Continuum to respond to regulatory obligations and is thus not covered by the work-product doctrine. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d at 984 (recognizing that a document may be prepared for multiple reasons, including "concern for future litigation" and also "to respond to regulatory obligations").

Accordingly, the court grants Plaintiff's motion regarding this letter.

      iv.    Continuum's Emails to Ai Bang Bao, Privilege Log #4

Between January 11–19, 2019, Continuum exchanged emails with Ai Bang Bao, the manufacturer, requesting information in response to three personal injury lawsuits and/or claims, including Plaintiff's, that were reported to Lenox. Continuum argues these emails are privileged under the self-critical analysis privilege.[7] Although Petitioner argues these emails "was in furtherance of obtaining self-critical information about the kettles following the reported injuries," [ECF No. 43 at 11], information-seeking does not comport with the self-critical analysis privilege, even if the court were to find the privilege could be invoked in this jurisdiction. *See, e.g., In re Air Crash at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. at 1054 ("first, the information must result from a critical self-analysis undertaken by the party seeking protection"); *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1189 (D.N.M. 2019) ("The self-critical analysis privilege, where recognized, generally protects from disclosure documents such as internal and confidential performance

---

[7] Continuum briefly asserts these emails are also protected by the work-product doctrine and the privilege has not been waived under the common interest doctrine. [ECF No. 43 at 9–10]. However, this argument fails, in addition to other similar arguments made by Continuum based on the common interest doctrine and Ai Bang Bao, where there is no indication that Continuum and Ai Bang Bao formed any agreement to pursue a joint litigation effort. *See Hunton & Williams*, 590 F.3d at 285 ("While agreement need not assume a particular form, an agreement there must be.").

evaluations, internal investigations records, and other documents containing an employer's self-critical analyses"); *Bobryk v. Durand Glass Mfg. Co.*, C/A No. 12-5360 NLH/JS, 2013 WL 5604342, at *2 (D.N.J. Oct. 11, 2013) ("Another main principle that can be drawn from the case law is that even if the self-critical analysis privilege applies it only covers subjective or evaluative materials, not objective materials or facts").

Accordingly, the court grants Plaintiff's motion regarding these emails.

     v.    *Elegonye*, *Zaridze*, *Maseng*, *Son Ly*, and *Gorman* Materials, Privilege Log #5, #6, #7, #8, and #9

As a preliminary matter, many of the emails Continuum asserts are privileged under this category occurred prior to the December 19, 2017, execution of the common interest agreement between Continuum and Lenox. As discussed above, "[d]ocuments exchanged before a common interest agreement is established are not protected from disclosure." *Hunton & Williams*, 590 F.3d. at 285 (citation omitted). Although Continuum argues in general terms that "privilege was not waived because . . . Lenox, Continuum. . . shared a common interest in the outcome" of the relevant litigation, [ECF No. 43 at 13], the assertion is insufficient. As discussed above, where there is no indication that Continuum and Lenox agreed to pursue a joint litigation effort prior to entering the common interest agreement, the common interest doctrine is not implicated and any underlying privilege that could be asserted is waived by disclosure to another party. *Hunton & Williams*, 590 F.3d at 284–

85 ("although a common interest agreement can be inferred where two parties are clearly collaborating in advance of litigation, mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed."); *see also In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341 ("There is no evidence showing that AOL and Wakeford were pursuing a common legal strategy before December 2001.").

Here, because Continuum has offered no evidence that prior to December 19, 2017, Lenox and Continuum were exchanging confidential information pursuant to any type of agreement to pool information for a common litigation goal, the undersigned grants Plaintiff's motion as to the following documents that occurred prior to December 19, 2017, that include Lenox and Continuum, and are located under privilege log #5, in part,  and #6: DefContinuum000608–09, DefContinuum000613–614, DefContinuum000626–27.

Two sets of emails remain to be addressed as to the *Elegonye* materials under privilege log #5. First, an email chain beginning June 28, 2017, is between Harold Nash ("Nash"), president of Continuum, and the claims adjuster for Continuum's liability insurer in which the adjuster asks questions concerning the *Elogonye* claim. This email is protected under the work-product doctrine in that it was created by Continuum's insurer "in anticipation of litigation" following receipt of the *Elogonye* claim. *See* Fed. R. Civ. P. 26(3)(A); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d at 984 ("The document

must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.").[8] Additionally, that Continuum forwarded the email to Lenox following Continuum and Lenox entering into the common interest agreement does not waive this privilege.

The second email chain discusses the ongoing *Elegonye* investigation, beginning May 20, 2018, and is also between Nash and the claims adjuster, as well as an additional Continuum employee and "randy@paston.com."[9] These emails contain mental impressions, conclusions, opinions, and legal theories of the insurer related to the *Elegonye* investigation, and, as such, "enjoys a nearly absolute immunity," which has not been overcome. *See In re Grand Jury Subpoena*, 870 F.3d at 316; *see also, e.g., Hohenwater v. Roberts Pharm. Corp.*, 152 F.R.D. 513 (D.S.C. 1994) (holding memorandum developed in course of defendant-corporation's preparation in case following meeting between corporate representatives and their attorney was covered by work product

---

[8] Plaintiff argues the presence of Continuum's liability insurer on communications waived any privilege in the communications Continuum could assert where Continuum and its liability insurer's "pre-suit interest may be adverse." [*See* ECF No. 42-1 at 24–25 (citing *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 366–67 (D.N.J. 1992)]. This document, however, provides no indication that Continuum and its liability insurer had adverse interests.

[9] In Continuum's privilege log, the latter person is identified only as "Randy [unknown last name]," and appears also to be involved in insurance. [ECF No. 42-6 at 1].

privilege, and no waiver of work product privilege occurred by release of memorandum to employee who was not someone with adverse interest to that of the corporation).

Turning to the *Maseng* materials under privilege log #7, these emails concern communication by Lenox's counsel to two Lenox employees, Nash, and a consultant directed to assist Lenox's counsel. These emails are protected by the attorney-client privilege, which has not been waived because the communication occurred after Lenox and Continuum entered into the common interest agreement and was shared between Lenox and Continuum pursuant to a common legal interest. *See In re New York Renu With Moistureloc Prod. Liab. Litig.*, C/A No. 766,000/2007, 2009 WL 2842745, at *2 (D.S.C. July 6, 2009) (citation omitted) ("When a consultant is part of attorney-client communications, the privilege is retained only if the consultant's services are necessary to the legal representation.").

Regarding materials under the last two privilege log entries, as stated by Continuum, "Plaintiff's Motion to Compel and Memorandum do not specifically address Privilege Log items #8 (*Son Ly*) and #9 (*Gorman*)." [ECF No. 43 at 12 n.3]. However, review of Plaintiff's motion reveals that although not specifically addressed by name, Plaintiff does seek production of these materials and discusses them generally. [*See, e.g.*, ECF No. 42-1 at 7, 11 n.7]. Because Continuum bears the burden of showing these materials are

privileged and has failed to address to specifically address them, the court grants Plaintiff's motion as to these materials.[10]

Accordingly, the undersigned grants Plaintiff's motion as to the materials subject to privilege log #5, in part, #6, #8, and #9, and denies Plaintiff's motion as to the materials subject to privilege log #7.[11]

III.    Conclusion

For the foregoing reasons, the court grants in part and denies in part Plaintiff's motion to compel. Continuum is directed to produce materials referenced in the privilege log #2–6, #8 and #9, except DefContinuum000607 and DefContinuum000610–612.

IT IS SO ORDERED.

*Shiva V. Hodges*

June 12, 2020                                    Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

---

[10] The *Son Ly* materials under privilege log #8 consist of a tender letter from Lenox's liability insurer to Continuum, and the *Gorman* materials under privilege log #9 consist of the *Gorman* complaint to Lenox, which Continuum represents has already been produced, as well as a forward of the *Gorman* complaint to Lenox's counsel and then another forward of the complaint from Lenox's counsel to Continuum. The forwarding emails contain no information.
[11] Plaintiff argues that to the extent the court finds the documents at issue privileged and that privilege not waived, the court should still direct production because she has substantial need for the materials and cannot obtain them without undue hardship. [ECF No. 42-1 at 30]. However, because the undersigned grants Plaintiff's motion except as noted, Plaintiff's argument that "[i]n order to fully glean the information contained in these documents, Plaintiff would be required to depose as many as 25 individuals," some of whom are located in China, *id.* at 31, no longer applies. Thus, the court finds Plaintiff has failed to carry her burden under Fed. R. Civ. P. 26(3)(A)(ii).